UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROSITA DIAZ, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *  Civil Action No. 14-cv-13363-IT |
| CAROLYN W. COLVIN, | * |
| COMMISSIONER SOCIAL SECURITY | * |
| ADMINISTRATION, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

March 28, 2016

TALWANI, D.J.

Plaintiff Rosita Diaz ("Diaz") seeks judicial review of a final decision by the Commissioner of Social Security Carolyn Colvin ("Commissioner") denying Diaz's application for disability insurance benefits and supplemental security income benefits and has filed a Motion for Order Reversing the Commissioner's Decision and Awarding Benefits [#15]. Defendant has filed a Motion to Affirm the Commissioner's Decision [#20]. The Magistrate Judge to whom the matter was referred recommended affirmance of the decision denying benefits. R. & R. [#40] 20. Plaintiff has filed timely Objections to the Magistrate Judge Report and Recommendation [#41].

The court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). As set forth below, the court adopts the

Magistrate Judge's statements of Facts and Procedural History and Disability Standard and the Commissioner's Decision, adopts in part and rejects in part the Magistrate Judge's recommendation, and remands the case to the Commissioner for further proceedings consistent with this Memorandum and Order.

I. Facts and Procedural History

Plaintiff's objections included no disagreement with the Magistrate Judge's statement of Facts and Procedural History, except to note that Diaz was misidentified in several places. Accordingly, the court adopts (with the correction of Diaz's name) this portion of the Magistrate Judge's Report and Recommendation. See R. & R. 2-11.

II. Disability Standard and the Commissioner's Decision

Plaintiff's objections also included no disagreement with the Magistrate Judge's statement of the Disability Standard and the Commissioner's Decision, and the court adopts this portion of the Magistrate Judge's Report and Recommendation as well. See R. & R. 11-13.

III. Standard of Review

An individual may obtain judicial review of any decision of the Commissioner made after a hearing. 42 U.S.C. § 405(g). On such review, the court has the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Services, with or without remanding the cause for a rehearing." Id. A denial of benefits must be upheld, however, "unless the [Commissioner] has committed a legal or factual error in evaluating a particular claim." Manso-Pizarro v. Sec'y Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quotation marks and citation omitted). In reviewing such denial, the Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could

accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

IV.   Discussion

Diaz contends that the Administrative Law Judge ("ALJ") erred in his assignment of weight to medical expert opinions regarding her physical impairments, which caused an error at step five of the five-step protocol for determining disability. Diaz also asserts that the ALJ erred in his assignment of weight to medical expert opinions regarding her mental impairments and in failing to separately consider depression as an impairment. Diaz contends that these failures caused an error at step three as to her mental impairments. These arguments will be considered in turn.

A.   Weight Given to Opinions Regarding Physical Impairments

The ALJ assigned "limited weight" to the opinion of Plaintiff's treating physician Dr. Tishler regarding Diaz's physical impairments and "significant weight" to the opinion of the state agency reviewing physician Dr. Karande. As a result of this relative assignment of weight, the ALJ determined that Diaz has the "residual functional capacity" "to perform sedentary work . . . except that she can occasionally stoop, crouch, kneel, or crawl." Administrative Record ("AR") 26.[1] The determination that Diaz can occasionally stoop, crouch, kneel, or crawl underlies the ALJ's finding at step five that Diaz is not disabled because, based on the

---

[1] The ALJ noted further that: "[s]he must avoid moderate exposure to extreme cold, extreme heat, wetness, and humidity"; "[s]he must avoid concentrated exposure to fumes, odor, dust, gases, and poorly ventilated areas"; "[her] work must be limited to simple, routine, and repetitive tasks"; "[s]he can have only occasionally interaction with the public, i.e. superficial interactions for less than one-third of the work day"; and "[her] work must be isolated with only occasional supervision, i.e. for less than one-third of the work day." Id.

3

Vocational Expert's testimony, there are jobs in the national economy for an individual of Diaz's age, education, employment history, and residual functional capacity. Plaintiff challenges the ALJ's discounting Dr. Tishler's opinion and favoring Dr. Karande's opinion.

Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion is entitled to "controlling weight" if the opinion "on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Id. Here, the ALJ asserted that "Dr. Tishler's opinion is only partially supported by the objective medical evidence." AR 29. Even assuming, however, that this amounts to a finding, supported by the record, that the treating physician's opinion was not "*well-supported* by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(c) (emphasis added), and thus not entitled to controlling weight, the Commissioner was still required to apply the factors detailed in 20 C.F.R. § 404.1527(c) to determine *what* weight to give both the treating and non-treating physician's opinions, and to give "good reasons" for the weight given. Id. The ALJ's reasons for affording a treating physician's opinion specific weight need "not only . . . be specific, they must also be supportable, and offer a rationale that could be accepted by a reasonable mind[.]" Hobart v. Astrue, No. 11-cv-151-PB, 2012 WL 832883, at *7 (D.N.H. Feb. 9, 2012) (internal citations omitted). While an ALJ need not "slavishly discuss" every factor, Moore v. Astrue, No. 06-136-B-W, 2007 WL 2021919, at *6 (D. Me. July 11, 2007), he must provide "good reasons" for the weight given to a treating source opinion, 20 C.F.R. § 404.1527(c)(2), and that given to the non-treating source opinion, 20 C.F.R. § 404.1527(e)(2)(ii).

Here, it appears that the ALJ was primarily focused on the consistency of Dr. Tishler's

opinion with the other record evidence.  See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").  In considering this factor, the ALJ overstated the limitations set forth in Dr. Tishler's opinion, asserting that Dr. Tischler opined that Diaz could not "sit, stand or walk for even two hours in an eight-hour day," AR 29, while Dr. Tishler's opinion does so limit standing and walking but states that Diaz could sit for "at least 2 hours," AR 977-78.  The ALJ then concluded that the substantial limitations assessed by Dr. Tishler with respect to sitting, standing, and walking "are not consistent with the clinical findings indicating that the claimant has normal strength, mobility, and motor skills despite her ankle and shoulder pain." AR 29-30.  With regard to Dr. Tishler's opinion that Diaz could never climb, balance, stoop, kneel, crouch or crawl, the ALJ concluded further that "the record does not suggest that the claimant's symptoms are so limiting that she can never perform any postural activities, including climbing or balancing." AR 30.  In juxtaposition, the ALJ found that the Dr. Karande's opinion that Diaz "can perform light work, [and] occasionally perform the relevant postural activities . . . is generally consistent with the medical examinations describing intact physical functioning despite the claimant's symptoms." Id.  These conclusions appear to have been based on a misreading of the record.

      First, the ALJ described Dr. Tishler's treatment records as noting that Diaz's ankle surgery "successfully restored effective function after appropriate post-surgical management," AR 27-28 (citing AR 681), though the cited treatment records state only that Diaz "did well with surgery" and was "eager to start PT," AR 681.  Second, the ALJ described other records as indicating that Diaz had "a normal ability to walk," AR 28, relying on two treatment records that state that Diaz was "able to heel, toe walk appropriately," AR 773, 907, not that she had "a

5

normal ability to walk" for any distance or length of time. These same records further state that Diaz's "recent ankle surgery [was] unfortunately without benefit." AR 775, 908. Third, the ALJ described the record as indicating that Diaz experienced "swelling of the ankle only on an isolated basis," AR 28, but cites only to a treatment record describing swelling of the ankle for which Diaz did not have surgery (the right ankle), AR 844, and overlooks other records that describe her left ankle as subject to "episodic swelling . . . exacerbated by long periods of standing at work," AR 708. Finally, the ALJ stated that Diaz has suffered only mild loss of shoulder strength and has responded well to physical therapy, AR 28, citing to physical therapy records that do state that Diaz has "responded well to treatment," AR 854, but which also state that the goal of reducing Diaz's shoulder pain to a four out of 10 on the pain scale was "not met" during the five weeks of physical therapy, id. In sum, these portions of the record cited by the ALJ are largely consistent with Dr. Tishler's opinion, and indeed, the ALJ ultimately concluded (consistent with Dr. Tishler's opinion and inconsistent with Dr. Karande's opinion), that "in light of the claimant's testimony regarding ongoing pain and difficulties sustaining standing and walking, . . . a further limitation to sedentary work is reasonable." AR 30.

The ALJ also considered the supportability of Dr. Tishler's opinion that Diaz's postural limitations are based on "her obesity & her chronic ankle issues." AR 978; see AR 28. He asserts that "the claimant's obesity does not independently impose additional limitations," AR 28, but offers no basis for that disagreement with Dr. Tishler's assessment of the postural limitations caused by obesity.[2] Rather, the ALJ adopted Dr. Karande's conclusion that Diaz can

---

[2] The assertion may be based on the ALJ's earlier erroneous conclusion that, at five-feet eight-inches tall and two hundred and eighty-seven pounds, Diaz's Body-Mass Index ("BMI") is 36.0. AR 28. BMI is a person's weight in kilograms divided by the square of the person's height in meters. See, e.g., http://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html. That formula would result in a BMI here of 43.6, not 36.0.

"occasionally perform the relevant postural activities," AR 30, even though Dr. Karande offers no support at all for her conclusion.  See AR 124.  20 C.F.R. § 404.1527(c)(3) provides that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion."  As to non-treating physicians, the weight to be given "will depend on the degree to which they provide supporting explanations for their opinions."  Id.  Here, while Dr. Tishler has not offered "medical signs and laboratory findings" for her conclusion as to the postural limitations, she has at least offered an explanation.  In contrast, Dr. Karande provides no basis for her conclusion that Diaz can "occasionally" perform these postural activities.

       The ALJ ignored altogether other 20 C.F.R. § 404.1527(c) factors that may be considered in deciding what weight to give the treating and non-treating physician here.   Both the examining relationship, 20 C.F.R. § 404.1527(c)(1), and the treatment relationship—including the length of treatment relationship and frequency of examination, and the nature and extent of the treatment relationship—20 C.F.R. § 404.1527(c)(2), favor Dr. Tishler's opinion over that of Dr. Karande, where Dr. Tishler was Diaz's primary care physician for almost twenty years, seeing her three to six times per year, and Dr. Karande did not examine Diaz at all.

       In sum, the ALJ's description of Dr. Tishler's testimony as unsupported or inconsistent with the record is not substantially supported, and the ALJ has also failed to consider other 20 C.F.R. § 404.1527(c) factors.  Accordingly, he has not provided good or supportable reasons for assigning Dr. Tishler's opinion "limited weight" and giving Dr. Karande's opinion "significant weight."

       The limited weight that the ALJ assigned to Dr. Tishler's opinion resulted in a

determination of Diaz's residual functional capacity not based on substantial evidence. Because the ALJ deferred to Dr. Karande's opinion over Dr. Tishler's, the ALJ determined that Diaz's residual functional capacity included, among other things, the ability to occasionally stoop, crouch, kneel, or crawl. AR 26. As a result, the ALJ considered only the portion of the Vocational Expert Dr. Suldner's testimony that corresponded to a residual functional capacity finding that allowed for *occasional* stooping, crouching, kneeling, and crawling. In particular, Dr. Suldner testified that three jobs existed for an individual of Ms. Diaz's age, education and work experience, who could only perform sedentary work and occasionally stoop, crouch, kneel, or crawl, and needed to avoid exposure to environmental irritants and have occasional interaction with the public and supervisors. AR 71-74. Based on this testimony, the ALJ concluded Diaz was not disabled at step five. AR 32. However, Dr. Suldner further testified, that none of those three jobs would be available to a person who could never climb, balance, stoop, bend, kneel, crouch, or crawl. AR 75. The ALJ's decision does not address this further testimony, presumably because it did not correspond to his residual functional capacity finding. Had the ALJ afforded Dr. Tishler's testimony greater weight, however, he may have considered the Vocational Expert's testimony and could have concluded that Diaz was disabled.

In light of the foregoing, because the ALJ's determination that Dr. Tishler's testimony was entitled to "limited weight" is not supported by substantial evidence and because this determination prejudiced the conclusion that Diaz was not disabled, this matter is remanded to reconsider Diaz's residual functioning capacity determination and the Vocational Expert's testimony.

    B. <u>Weight Given to Opinions Regarding Mental Impairments</u>

Diaz further contends that the ALJ erred in assigning "very little weight" to the opinion

8

of Diaz's treating psychiatrist Dr. Marfeo. Dr. Marfeo opined that Diaz had several symptoms of severe depression and the following functional limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. AR 872-75.

Step three of the five-step protocol for determining disability requires the ALJ to determine whether a claimant has a serious impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is deemed automatically disabled. Here, the ALJ assessed whether the severity of Diaz's mental impairments met the criteria of Listing 12.06 for "Anxiety Related Disorders." Under Listing 12.06, a claimant must satisfy some criteria under "Paragraph A" (symptoms) and two criteria from "Paragraph B" (functional limitations).[3] The four Paragraph B criteria are the four functional limitations addressed by Dr. Marfeo's opinion. Although Dr. Marfeo opined that Diaz satisfied each of these criteria, the ALJ assigned this opinion "very little weight," AR 30, and concluded that Diaz did not satisfy any of these Paragraph B criteria, AR 25-26.

In assigning "very little weight" to Dr. Marfeo's opinion, the ALJ pointed to Dr. Marfeo's specialization (20 C.F.R. § 404.1527(c)(5)), the foundation of his opinion on Diaz's "subjective complaints" and its contrast with the "objective" findings (20 C.F.R. § 404.1527(c)(4)), and the purported lack of support for the opinion in Dr. Marfeo's own treatment records (20 C.F.R. § 404.1527(c)(3)). See AR 30. The ALJ's conclusions that Dr. Marfeo's opinion contrasted with—or was inconsistent with—objective findings in the

---

[3] Alternatively, a claimant who satisfies only the criteria of Paragraph C will meet the requirements for Listing 12.06. Diaz does not contend that she satisfies the criteria in Paragraph C for Listing 12.06.

record, at least to Diaz's functional limitations, is substantially supported and is a basis for affording Dr. Marfeo's opinion less than controlling weight. See 20 C.F.R. § 404.1527(c) (treating source's opinion on nature of impairment is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in the case record").

Diaz's own testimony and the record substantially supports the ALJ's determination that her mental impairments have caused generally moderate functional limitations and that such moderate limitations are inconsistent with Dr. Marfeo's opinion of marked functional limitations. As to activities of daily living, Diaz testified that she can independently clean, prepare meals, dress herself, use the computer, and drive herself and others. See AR 51-55; see also AR 963 (noting that Diaz admits she can perform most household chores). Though Diaz notes that the record demonstrates her fear of driving, it does not suggest that this fear has limited her ability to drive. See AR 53-54 (stating she drove her husband to work and herself to appointments). As to social functioning, Diaz testified that she does isolate herself from her husband approximately three times per week, AR 58, and that she has stopped socializing with relatives, AR 50, indicating that her mental impairments have interfered with her interpersonal relationships. This evidence does not necessarily show, however, that Diaz has experienced marked limitations in her ability to function socially in other settings, particularly in light of Diaz's treatment records routinely stating that she presents as pleasant, cooperative, and with appropriate behavior, see AR 405, 705, 799, 806, 942, and her own testimony that she is able to go out in public for driving, shopping, and appointments. As to concentration, persistence, and pace, while Diaz testified that her depression has made her forgetful, she also testified that she compensates by writing important information down, suggesting the impact on her memory is moderate. AR 60.

Finally, though Dr. Marfeo opined that Diaz has repeated suffered episodes of decompensation of extended duration, Diaz herself does not contend that to be true. See Pl.'s Mem. Law Supp. Mot. Reverse Commissioner 17-19 (arguing only that Diaz satisfies the first three Paragraph B criteria). Thus, in light of the foregoing, the ALJ's determination that Dr. Marfeo's opinion regarding Diaz's functional limitations is inconsistent with the record, is supported by substantial evidence.

Apart from their inconsistency with objective findings regarding Diaz's functional limitations, however, the other reasons the ALJ gave for assigning Dr. Marfeo's opinion "very limited weight" in particular are not supported by substantial evidence. First, the ALJ misstated Dr. Marfeo's specialty as primary care rather than psychiatry. See AR 30. Indeed, precisely because Dr. Marfeo is Diaz's psychiatrist, his opinion regarding her mental impairments is entitled to more weight under 20 C.F.R § 404.1527(c)(5). Second, the ALJ suggested that one day of Dr. Marfeo's treatment records stating that Diaz had reported her mood as "not so bad" on that date demonstrates that Dr. Marfeo's opinion as to the severity of her depression symptoms was not supported by his own treatment records. See AR 30 (citing AR 891). The treatment records cited by the ALJ, however, further state that Diaz was in "slightly better spirits than in the past," and the ALJ overlooked other records suggesting that Diaz's depression was persistent and resistant to treatment. See, e.g., AR 891, 916 (discussing the possibility of electroconvulsive therapy and hospitalization or partial program as treatment options).

Nonetheless, though these two reasons are not reasonably supported, the ALJ's determination that Dr. Marfeo's opinion regarding Diaz's functional limitations is inconsistent with the record is substantially supported. Because the ALJ did not err in not giving Dr. Marfeo's opinion controlling weight, the ALJ properly considered the opinion of Dr. Bortner of

the state Disability Determination Service. See AR 30. Dr. Bortner opined that Diaz presented moderate as opposed to marked limitations in the first three Paragraph B criteria and that she had experienced "one or two" episodes of decompensation of extended duration. AR 122, 125-27. The ALJ's conclusion that these findings were consistent with the record, as described above, is not unsupported by substantial evidence. Therefore, the court may not disturb the ALJ's determination that Dr. Bortner's opinion was entitled to "significant weight" and that, based on this opinion, Diaz did not satisfy at least two of the Paragraph B criteria for Listing 12.04.

### C. Failure to List Depression as a Severe Impairment

As noted above, step three requires the ALJ to determine whether a claimant has a serious impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. Diaz objects that the ALJ assessed only whether the severity of Diaz's mental impairments met the criteria of Listing 12.06 for "Anxiety Related Disorders," but did not assess whether her mental impairments met the criteria of Listing 12.04 for "Affective Disorders." To meet these criteria, a claimant must satisfy the criteria of "Paragraph A" for Listing 12.04 which differ from the criteria of "Paragraph A" for Listing 12.06. The claimant, however, must also meet two criteria from "Paragraph B," and the criteria of Paragraph B under both Listing 12.04 and 12.06 are identical. Therefore, a determination that Diaz does not satisfy at least two of Paragraph B criteria for Listing 12.06 necessarily means that Diaz also did not satisfy at least two of the Paragraph B criteria for Listing 12.04. Accordingly, the ALJ's failure to explicitly consider whether Diaz satisfied the requirements of Listing 12.04 was not remandable error.

### V. Conclusion

In light of the foregoing, the court ALLOWS IN PART Diaz's Motion for Order Reversing the Commissioner's Decision and Awarding Benefits [#15] and DENIES Defendant's

<u>Motion to Affirm the Commissioner's Decision</u> [#20].  This matter is remanded to the ALJ for further proceedings consistent with this order.

    IT IS SO ORDERED.

Date: March 28, 2016                                          <u>/s/ Indira Talwani          </u>
                                                                                                      United States District Judge